UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMANUEL JOIA,                          :
                Plaintiff,             :
                                       :
        v.                             :        C.A. No. 18-365WES
                                       :
JOZON ENTERPRISES, INC.,               :
                Defendant.             :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge.

Plaintiff Emanuel Joia, *pro se*,[1] initiated this case against his former employer, Defendant

Jozon Enterprises, Inc., by filing a Petition to Compel Arbitration pursuant to § 4 of the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 4. ECF No. 17.[2] In his Petition, Plaintiff asks the Court to

"issue an order, pursuant to Section 4 of the Federal Arbitration Act, compelling the arbitration

of all claims in the Complaint[,]" as required by an arbitration agreement signed by the parties

and dated April 11, 2017 ("Arbitration Agreement").[3] ECF No. 17 at 19, 23-28. Defendant

objected to the Petition, arguing that Plaintiff is not a party aggrieved by a refusal to arbitrate, as

the FAA mandates, because Plaintiff has failed to initiate arbitration pursuant to the terms of the

Arbitration Agreement, which is a prerequisite to Defendant's duty to arbitrate. ECF No. 30 at 2.

According to Defendant, it has not refused to arbitrate and stands ready, willing and able to do

so, if an arbitration is initiated by Plaintiff under the Arbitration Agreement.

---

[1] The Court is mindful of its obligation to read with leniency the filings of *pro se* litigants like Plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] The Petition was amended before it was served. The version at ECF No. 17 is the operative pleading.

[3] The version of the Arbitration Agreement that Plaintiff attached to his Petition shows his signature but does not have the signature of the representative of Defendant. ECF No. 17 at 23-28. Defendant attached to its opposition to the Petition the fully executed Arbitration Agreement, which includes the signature of Defendant's "General Manager." ECF No. 30-1 at 2-7. Neither party disputes its authenticity.

In light of the apparent confluence of the parties' positions, a Rule 16 conference was promptly held. During the conference, the parties confirmed that the Arbitration Agreement is a true copy of the controlling agreement between them, that Plaintiff has not initiated arbitration pursuant to the rules of the American Arbitration Association ("AAA") as required by the Arbitration Agreement and that Defendant acknowledges and intends to abide by its contractual duty to arbitrate. At the conference, based on its continuing duty to inquire as to its subject matter jurisdiction, even absent a motion, McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004), Behroozi v. Behroozi, C.A. No. 15-536S, 2016 WL 8461181, at *1 (D.R.I. Nov. 22, 2016), adopted, 2017 WL 933059 (D.R.I. Mar. 8, 2017), the Court advised the parties that it was concerned about jurisdiction and would engage in a *sua sponte* analysis of whether this case should be dismissed for lack of jurisdiction.[4]  See ECF No. 44 at 2 (noting open question regarding Court's jurisdiction). Based on the analysis that follows, I now recommend that the case be dismissed because the Court has neither statutory nor constitutional subject matter jurisdiction.

## I.  Background[5]

According to the materials attached to the Petition, Plaintiff worked for Defendant as a delivery driver with Domino's Pizza for approximately five months until September 2017. ECF No. 17 at 13-14, 38, 47. In April 2017, presumably at the initiation of Plaintiff's employment with Domino's Pizza, the parties executed the Arbitration Agreement. Id. at 11, 23-28.

The Arbitration Agreement provides that "all claims, disputes, and controversies" that either Plaintiff or Defendant may have against the other, including any that "arise out of the

---

[4] Based on this concern about jurisdiction, a scheduling order was not entered.

[5] This background is drawn from Plaintiff's Petition except where otherwise indicated.

employment context[,]" must be resolved by binding arbitration.  Id. at 23.  More specifically, it provides that any disputes related to Plaintiff's "job application, hiring, terms and conditions of employment, job assignments, payment of wages, benefits, forms of compensation, or termination[,]" including claims of employment discrimination arising under state or federal law, must be "submitted to and determined exclusively by binding arbitration under the [FAA]."  Id. at 23-24 (§ I-II).  The Agreement requires that any such arbitration must be conducted pursuant to the AAA rules.  Id. at 25 (§ III).  And, if it is the employee who is aggrieved, he/she must initiate arbitration using the procedure set by the AAA rules.  Id. at 25-26 (§ III).  While the Agreement requires that the party requesting arbitration must pay the AAA filing fee, the AAA rules referenced in the Agreement provide for an "Administrative Fees Hardship Waiver," which contemplates a deferment, reduction or waiver of the filing fee for an individual who cannot afford the fee.[6]  ECF No. 40-1 at 28, 52-53.  Otherwise, the Arbitration Agreement provides that the arbitrator's fees and the other expenses imposed by AAA are borne by Defendant.  ECF No. 17 at 26 (§ III F).  The Arbitration Agreement includes the stipulation that the duty to arbitrate survives the termination of the employment relationship.  Id. at 23.

When Plaintiff terminated his employment with Domino's Pizza in September 2017, he explained the reasons for his resignation in a letter dated September 9, 2017:

> I do not fit the company persona and am finding it difficult to conform to the environment as well as the requirements of the job.  I am late frequently because I am always caught up in traffic.  I have had issues with co-workers, on more than one occasion, and I can't seem to fit the team persona.  It would be best that I remove myself from this environment before it becomes more problematic.

---

[6] At the Court's request, Defendant filed the applicable AAA rules, which include the rules establishing the procedure for getting a waiver of the filing fee to be followed by an individual who lacks the financial ability to pay. ECF No. 40-1 at 28, 52-53.

Id. at 47.  After he resigned, Plaintiff's application for unemployment benefits was denied by a referee who found that Plaintiff left work voluntarily without good cause in that there was no evidence of workplace harassment and no evidence that Plaintiff was inappropriately denied access to his paystub.  Id. at 38-44.  The record does not disclose whether Plaintiff appealed this decision.

As revealed by the attachments to the Petition, in July 2017, Plaintiff filed a complaint with the Rhode Island Commission for Human Rights alleging that he was "harassed verbally by the entire staff," including that other employees sabotaged his work; that he was discriminated against by the refusal to give him paystubs and other actions such as putting "some Viagra like substance in my food"; and that he believed he was "being surveilled" outside of work.  Id. at 45-46.  Also in July 2017, he made a complaint to the Rhode Island Department of Labor and Training that he did not get a paystub and that "my employer is following me and surveilling me outside of work."  Id. at 48.  Beginning in September 2017, he filed complaints in the Rhode Island District and Superior Courts.[7]  These allege that Defendant did not comply with the wage-notice-posting requirements in 29 C.F.R. § 516.4 and R.I. Gen. Laws § 28-12-11, that Plaintiff was harassed in that "coworkers and managers collaborated in fracas to influence the plaintiff to quit in turn diminishing the plaintiffs' wages," and that Defendant sabotaged Plaintiff's "efforts to earn unemployment benefits."  ECF No. 17 at 29-30.

According to Plaintiff's Petition, and confirmed by Defendant at the Rule 16 conference, as well as by the electronically accessible public docket of the Superior Court, Plaintiff's Superior Court claims were dismissed based on the Arbitration Agreement.  As Plaintiff's

---

[7] Multiple complaints are attached to the Petition.  ECF No. 17 at 9, 29, 32, 37.  The state court public access dockets reveal that Plaintiff filed a Superior Court case (CA No. PC-2017-4466) and a District Court case (Case No. 6CA-2018-01502) against Defendant, both of which are now closed.

Petition represents, the Superior Court considered but rejected Plaintiff's argument that his resignation letter voided the Arbitration Agreement.[8]  No appeal was taken from this decision.

After the Superior Court's decision became final, instead of initiating arbitration with AAA, on July 2, 2018, Plaintiff filed the pending Petition to Compel Arbitration in this Court.  In it, he petitions this Court to compel Defendant to arbitrate the following claims: that Defendant violated 29 C.F.R. § 516.4 and R.I. Gen. Laws § 28-12-11 (wage posting requirements); that Defendant engaged in "collective sabotage for unjust enrichment[,]" assault, intentional infliction of emotional distress, negligence and malice; and that Defendant "falsified evidence that would lead to the denial of the plaintiff's unemployment insurance, ultimately resulting in the denial of benefits."  ECF No. 17 at 1-2.  In a supplement to the Petition, Plaintiff mentions "FLSA" and references state law claims based on "Rhode Island's Fair Labor Standard Act" and "RI General Assembly Statement of Earnings requirements."  Id. at 15.  These references are based on the allegation that Defendant failed to supply Plaintiff with a paystub.

The prayer for relief in the Petition's supplement asks the Court to compel arbitration of all of these claims pursuant to FAA.  Id. at 19.  Plaintiff asks the Court to select and appoint the arbitrator, citing 9 U.S.C. § 5 as the foundation for the request.[9]  In addition, the Petition asks the Court to summon the witnesses to the arbitration, citing 9 U.S.C. § 7.[10]

---

[8] This state court decision is not surprising.  The Arbitration Agreement expressly provides that it "survives any decision to terminate [Plaintiff's] employment with [Defendant]."  ECF No. 17 at 23 (§ I).  Plaintiff also mistakenly references R.I. Gen. Laws § 6A-3-604, which relates to the cancellation of a negotiable instrument and has nothing to do with an agreement to arbitrate.

[9] As noted *infra*, n.16, § 5 provides for a court-appointed arbitrator only if the arbitration agreement fails to provide an effective method of selection; that is not the case here in that the Arbitration Agreement provides for reliance on the AAA rules, which establish a procedure for selection of a neutral arbitrator.  ECF No. 40-1 at 18.

[10] As noted *infra*, n.16, § 7 provides that it is the arbitrator who summons the witnesses.  The Court's role is to enforce the arbitrator's summons.  9 U.S.C. § 7.

According to the Petition, Plaintiff resides in Rhode Island and Defendant's principal place of business is in Rhode Island. ECF No. 17 at 1, 13-14. Plaintiff asserts federal question jurisdiction based on the FAA. Id. at 1 (citing 9 U.S.C. § 4). The Petition does not request a jury trial. Id.

In Defendant's objection to the Petition, it agrees that the parties have a valid agreement to arbitrate. It objects to the Petition only in that it alleges that it has never refused to arbitrate Plaintiff's claims under the Arbitration Agreement. ECF No. 30. At the Rule 16 conference held on January 23, 2019, Defendant further confirmed that the Arbitration Agreement is a binding contract between the parties and represented that it would submit to arbitration if Plaintiff initiates it under the terms of the Arbitration Agreement.

In response, Plaintiff conceded that he had not initiated AAA arbitration. He stated that he feared he would be unable to afford the filing fee[11] and that the AAA "will assume a conflict of interest, as the respondent [sic] has no trust in the client of the counsel." ECF No. 41 at 1. Those fears are why he filed the Petition in this Court, believing that the filing complies with his contractual duty to arbitrate and protects him by involving the Court (which granted him *in forma pauperis* status for this case) in the arbitration process. Ultimately, Plaintiff represented that he understands arbitration is mandatory pursuant to the Arbitration Agreement; he does not seek to relitigate the state court decision that the Arbitration Agreement is binding and enforceable and was not terminated by his resignation. He also stated that he believes that he has other, as yet unpled and unmentioned, claims that do not fall within the Arbitration Agreement.

---

[11] At the time of the Rule 16 conference, Plaintiff did not yet know that the AAA rules have a procedure that is analogous to the Court's *in forma pauperis* process. Plaintiff's articulation of this fear triggered the Court's directive that Defendant make a filing to clarify whether AAA arbitration can be initiated by an individual like Plaintiff, who cannot afford the filing fee. As noted, *supra*, n.6, it can.

## II.    Analysis

"It is black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction."  See McCulloch, 364 F.3d at 5.  Article III of the United States Constitution limits this Court's jurisdiction to claims involving actual "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1.  Federal courts have authority over two types of cases or controversies.  First, there is federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  And second, 28 U.S.C. § 1332 authorizes the Court to hear cases where the parties are diverse – meaning domiciled in different states – and the amount in controversy exceeds $75,000.  "Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign."  Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982).  In every case, the Court "must assure itself of both constitutional and statutory subject matter jurisdiction."  U.S. House of Representatives v. Burwell, 130 F. Supp. 3d 53, 65 (D.D.C. 2015) (citing Article III for the former and § 1331 for the latter); Comm. on Judiciary, U.S. House of Representatives v. Miers, 558 F. Supp. 2d 53, 64 (D.D.C. 2008) ("§ 1331 provides subject matter jurisdiction"); see also Credit Bureau Strategy Consulting, LLC v. Bridgeforce, LLC, CIVIL No. JKB-18-71, 2018 WL 3546722, at *2 (D. Md. July 23, 2018) ("The most common forms of the federal courts' original subject matter jurisdiction are diversity jurisdiction, see 28 U.S.C. § 1332, and federal question jurisdiction, see 28 U.S.C. § 1331.").

In analyzing each basis for authority, the Court "may exercise [its] discretion in choosing which of these threshold issues to address initially."  Norfolk S. Ry. Co. v. Guthrie, 233 F.3d 532, 534 (7th Cir. 2000) (addressing litigants' arguments "concerning constitutional subject-

matter jurisdiction and . . . statutory subject-matter jurisdiction") (citing <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 97 n.2 (1998)). In this case Plaintiff's core pleading is the Petition, which seeks only to compel arbitration and therefore requires inquiry into the Court's § 1331/1332 authority. The confluence of the parties' positions, which endangers Article III authority, did not manifest until Defendant was served, formally appeared and the Rule 16 conference happened. Since "Article III jurisdiction need not always be examined before any other issue," <u>see</u> <u>Guthrie</u>, 233 F.3d at 534, the unique sequencing of issues in the case makes the statutory question better to answer first. Consequently, this report and recommendation addresses the issues in that order: statutory, then constitutional.

### A. Statutory Jurisdiction – Federal Question

Relying on the FAA, 9 U.S.C. § 4, Plaintiff asserts jurisdiction based on the presence of federal question and not diversity. He is right to eschew § 1332; the Petition does not establish diversity among the parties because it lists Plaintiff and Defendant as both domiciled in Rhode Island. <u>See</u> <u>Mills v. Brown</u>, 372 F. Supp. 2d 683, 690 (D.R.I. 2005) (no diversity jurisdiction where "Plaintiff states in her complaint that both she and Defendants are residents of Rhode Island, and therefore, the inquiry need go no further"); <u>see also</u> ECF No. 17 at 1, 13-14, 23 (asserting Rhode Island addresses; letterhead with Rhode Island address). Mindful of the leniency owed to Plaintiff as a *pro se* litigant, the Court's analysis of the Petition seeks to discern whether it satisfies § 1331.[12]

---

[12] While courts typically focus on the leniency afforded to *pro se* litigants in the context of whether they have pled substantive claims for relief, the same principles may be applied in this jurisdictional analysis. <u>See</u> <u>Firstenberg v. City of Sante Fe, N.M.</u>, 696 F.3d 1018, 1024 (10th Cir. 2012) (examining *pro se* complaint for federal question, stating, "we are content to assume without deciding that these same liberal-construction principles apply with full force to the distinct jurisdictional inquiry we are obliged to undertake here").

"[T]he gates of federal question jurisdiction are customarily patrolled by a steely-eyed sentry – the well-pleaded complaint rule." Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 17 (1st Cir. 2018). The Court assesses its authority "based on what necessarily appears in the plaintiff's statement of [his] own claim . . . unaided by anything alleged in anticipation of avoidance of defenses which it is thought that a defendant may interpose." Id. "As a matter of common practice, a district court confronted with a question of subject matter jurisdiction reviews a plaintiff's complaint not to judge the merits, but to determine whether the court has the authority to proceed." BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 832 (1st Cir. 1997). This is not a high bar: "The federal claim need not have merit in order for the court to assume jurisdiction." Lawless, 894 F.3d at 18.

The FAA alone does not supply federal question jurisdiction. 9 U.S.C. § 4 (petition to arbitrate may be filed in federal court only if the court would have "jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties"). In this sense, it "is something of an anomaly in the field of federal-court jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983). "As for jurisdiction over controversies touching arbitration," the FAA "bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581-82 (2008); see Moses H., 460 U.S. at 25, n.32 ("It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise."); UBS Fin. Servs. Inc. v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 223 F. Supp. 3d 134, 137 (D.P.R. 2016) ("To open the

federal court's door, a party must demonstrate an independent basis for jurisdiction over the arbitration-related dispute."). "A federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law[.]" Vaden v. Discover Bank, 556 U.S. 49, 62 (2009). The United States Supreme Court "read[s] § 4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the [arbitration] agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." Id. at 66; see also Wolf v. Altitude Costa LLC, 347 F. Supp. 3d 106, 108-10 (D.P.R. 2018) (dismissing a petition to compel arbitration "for want of subject matter jurisdiction" under § 1332) (citing Vaden, 556 U.S. at 68).

"Looking through" the Petition, it advances many claims, but does not clearly allege a federal question. As noted above, the Petition consists mostly of state law causes of action sounding in tort or equity. ECF No. 17 at 1-2 ("the collective sabotage for unjust enrichment leading to the dismissal of the plaintiff by way of; [sic] assault, intentional infliction of emotional distress, acts of negligence, and malice"). There is also a citation to the Rhode Island statute on employers posting notices. Id. (citing R.I. Gen Laws § 28-12-11). And the Petition challenges the state's denial of unemployment benefits. Id. No federal question appears in these state-law-grounded claims.

The Petition does cite to 29 C.F.R. § 516.4, which is the federal counterpart to R.I. Gen Laws § 28-12-11. That federal regulation, however, does not create a private right of action. Marchak v. Observer Publ'ns, Inc., 493 F. Supp. 278, 281 (D.R.I. 1980) ("[D]efendants' second argument is that the private right of action under § 216(b) is extremely limited in its scope and that it does not encompass . . . the failure to post notices, 29 CFR Part 516. The Court agrees."); see Lopez v. Tri-State Drywall, Inc., 861 F. Supp. 2d 533, 537 (E.D. Pa. 2012) ("an employer's

failure to post explanatory notices as required by 29 C.F.R. § 516.4 does not create a private right of action for enforcement").[13]  In addition, once in the Petition and several times in the supplement to the Petition, Plaintiff obliquely refers to "FLSA."[14]  ECF No. 17 at 2, 10, 11, 15, 29.  However, these references fail to suggest coherent facts outlining a substantive claim under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*[15]  Rather, Plaintiff's claims related to FLSA are expressly based on his allegation that Defendant failed to post the required wage notice.  E.g., ECF No. 17 at 29 ("plaintiff didn't receive a notice explaining FLSA that is required by 29 C.F.R. § 516.4").

Although § 1331 is not a high bar, the Petition does not get over it.  Plaintiff is not held to the standard of a trained lawyer, yet the Court must "rely on the plaintiff's statement of his own cause of action."  Firstenberg, 696 F.3d at 1024 (conducting § 1331 analysis of a *pro se* complaint).  The Court "may not rewrite [the Petition] to include claims that were never presented."  Id.  Leniency does not allow the Court to "assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged."  Salazar v. White, Civil Action No. 14-cv-02081-RM-CBS, 2015 WL 13730682, at *2 (D. Colo. July 7, 2015), adopted, Civil Action No. 14-cv-02081-RM-CBS, 2015 WL 5781650 (D. Colo. Oct. 5, 2015).

---

[13] It is also questionable that R.I. Gen. Laws § 28-12-11 establishes a private right of action.  Although the failure to comply with state and federal notice requirements may justify tolling the statute of limitations on a substantive wage claim, Guarcas v. Gourmet Heaven, LLC, C.A. No. 15-056ML, 2016 WL 7632844, at *4 (D.R.I. Nov. 30, 2016), adopted, 2017 WL 127868 (D.R.I. Jan. 3, 2017), otherwise, these requirements are enforced by the applicable state or federal agency.

[14] Some of the references are to "Rhode Island's Fair Labor Standard Act," ECF No. 17 at 10, 11, 15, and others are simply, "FLSA."  Id. at 2, 29.

[15] The Petition's vague reference to "discrimination" expressly provides that the term is meant "in the sense that they refuse to give me my paystubs and weekly delivery run printouts."  ECF No. 17 at 45.  Similarly, the allegations about the conduct of Plaintiff's coworkers, who are accused of harassing and conspiring against him, even if liberally construed, simply do not support a recognizable federal cause of action.  See id. at 45-46.

Based on the foregoing, I find the Petition fails to establish statutory subject matter jurisdiction. Normally, such a finding would be coupled with a recommendation that the claimant be afforded leave to amend because the Petition is not "patently meritless and beyond all hope of redemption," in that it remains conceivable that Plaintiff has a claim grounded in a federal question. Brown v. Rhode Island, 511 F. App'x 4, 7 (1st Cir. 2013) (per curiam). However, when linked to the fatal absence of a justiciable Article III case or controversy discussed *infra*, this deficiency compels the recommendation that the Court should simply dismiss.

**B. Constitutional Jurisdiction – "Cases" or "Controversies"**

The constitutional requirement of a case or controversy "was designed to ensure that federal courts decide only disputes of 'a Judiciary nature,' thereby prohibiting advisory opinions[.]" Gilday v. Dubois, 124 F.3d 277, 295 (1st Cir. 1997) (quoting M. Farrand, 2 *Records of the Federal Convention of 1787*, at 430 (1911)); Operation Clean Gov't v. R.I. Ethics Comm'n, 315 F. Supp. 2d 187, 193 (D.R.I. 2004) ("federal courts do not issue advisory opinions"). "It follows that federal courts lack constitutional authority to decide moot questions; the fact that a live controversy existed when the plaintiff brought suit is not enough." Redfern v. Napolitano, 727 F.3d 77, 83 (1st Cir. 2013) (internal quotation marks omitted); Operation Clean Gov't, 315 F. Supp. 2d at 193 ("If the case and controversy requirement is not satisfied, the matter is moot, and must be dismissed."). A case is moot "when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001).

The parties' representations to the Court at the Rule 16 conference confirmed that they concur that the Arbitration Agreement sets forth their agreement and that, as the Superior Court

found, it is binding and mandates that all of Plaintiff's claims must be resolved by AAA

arbitration.  Plaintiff filed and served the Petition to compel arbitration pursuant to the FAA,

apparently based on the misunderstanding that the FAA could require the Court to appoint the

arbitrator and summon the witnesses, which it does not.[16]  Marks 3 Zet-Ernst Marks GmbH &

Co. KG v. Presstek, Inc., 455 F.3d 7, 14 (1st Cir. 2006) (proper to dismiss arbitration petition

asking for relief that was unavailable).  Nevertheless, he acknowledges that the Arbitration

Agreement is enforceable and that he has no reason grounded in the law to avoid AAA

arbitration; his Petition asks the Court to compel arbitration, not to allow him to avoid it.[17]  For

its part, Defendant has been and remains ready, willing and able to arbitrate in accordance with

the terms of the Arbitration Agreement.  Thus, any dispute that may have existed as to arbitration

is "no longer live" and should be found moot.  Cruz, 252 F.3d at 533.

The mootness of the Petition defenestrates the Court's Article III jurisdiction over it.

Section 4 of the FAA expressly limits the Court's authority to order arbitration to cases where a

claimant is aggrieved by the "failure, neglect, or refusal" of the other party to arbitrate.  It

therefore follows that "it is only 'the alleged failure, neglect, or refusal of another to arbitrate'

which triggers jurisdiction under 9 U.S.C. § 4."  See Marzano v. Proficio Mortg. Ventures, LLC,

942 F. Supp. 2d 781, 798-99 (N.D. Ill. 2013) (refusing to order arbitration because it was "not

clear that Plaintiffs have refused to arbitrate").  At bottom, there is no case or controversy where,

as here, it is unambiguous under the FAA that the claimant seeking arbitration is not currently

---

[16] The FAA permits the court to appoint the arbitrator only if the arbitration agreement fails to establish an effective method of selection. 9 U.S.C. § 5.  The FAA also provides that it is the arbitrator who summons the witnesses; the court may enforce an arbitrator's summons.  9 U.S.C. § 7.

[17] Plaintiff alerted the Court that he has argued his resignation letter "evaded" the Arbitration Agreement, but that "Justice Long [of the Superior Court] felt as though the petitioner's argument was not strong enough to influence an overruling decision."  ECF No. 17 at 12.  Plaintiff does not seek to relitigate the Superior Court's rejection of that argument.  Rather, his Petition in this Court is to compel, not to avoid arbitration, and amounts to an abandonment of this argument.

aggrieved because the other party to the arbitration agreement is not refusing to arbitrate. Phoenix Aktiengesellschaft v. Ecoplas, Inc., 391 F.3d 433, 437 (2d Cir. 2004) (Sotomayor, J.) ("[I]t is doubtful that a petition to compel filed before the 'adverse' party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance.") (quoting Hartford Accident & Indemnity Co. v. Equitas Reins. Ltd., 200 F. Supp. 2d 102, 108 n.8 (D. Conn. 2002)); PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1067 (3d Cir. 1995) ("unless the respondent has resisted arbitration, the petitioner has not been 'aggrieved' by anything," so it is doubtful that case presents court with Article III justiciable case or controversy); cf. Thompson v. Cloud, 764 F.3d 82, 92 (1st Cir. 2014) (citing PaineWebber with approval and endorsing standard requiring a clear refusal to arbitrate as also applicable to agreement to mediate); Union Independiente de Abogados de la Sociedad para Asistencia Legal v. Sociedad para Asistencia Legal de Puerto Rico, Inc., 706 F. Supp. 3, 5 (D.P.R. 1989), aff'd, 887 F.2d 259 (1st Cir. 1989) ("union's cause of action to compel arbitration arises when the employer takes the unequivocal decision that it will not arbitrate").  Such an absence of a case or controversy may be raised *sua sponte*.  AES Gener, S.A. v. Compania Carbones del Cesar S.A., No. 08 Civ. 10407(WHP), 2009 WL 2474192, at *3 (S.D.N.Y. Aug. 12, 2009) ("this Court *sua sponte* questions its jurisdiction over this action," because claimant did not request arbitration and adverse party never refused to arbitrate; petition to arbitrate denied and case closed).

Based on the foregoing, I find that the Court "lack[s] constitutional authority to decide moot questions" like those presented in the Petition.  See Redfern, 727 F.3d at 83.  Accordingly, I recommend that the Court dismiss the case because it does not present an Article III case or controversy.

## III.   Conclusion

Based on the foregoing, I conclude that the Court lacks statutory and constitutional subject matter jurisdiction over the case, and I recommend that the Court dismiss Plaintiff's petition (ECF No. 17) without prejudice.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

So ordered.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 13, 2019